EARL M. LONGSHORE, Respondent, v. THE ALBANY GARAGE COMPANY and CITY OF ALBANY, NEW YORK, Appellants, Impleaded with JENNIE A. WHALEN and RALPH HOXSIE, Defendants.

Separate appeals by the defendant The Albany Garage Company and by the defendant City of Albany from a judgment of the Supreme Court, entered in the Albany county clerk's office on June 8, 1937, and also from an order entered in said clerk's office on June 14, 1937.

Plaintiff has recovered a judgment against the city and property owner for personal injuries suffered when a truck came into collision with a canopy under which plaintiff was standing which extended over the sidewalk.

Judgment and order affirmed, with costs.

Hill, P. J., Crapser, Bliss and Heffernan, JJ., concur; McNamee, J., dissents, with a memorandum.

MCNAMEE, J. (dissenting). William street in the city of Albany runs uphill toward the north, and is intersected by Howard street running on the level east and west. Thus the intersection has three general levels, resulting in a correspondingly irregular pavement. On the southwest corner of these streets, defendant's garage building is located. And the corner of the building is truncated so as to receive entrance doors, and permit ingress from either of these streets at the corner.

William street is thirty-six feet wide, and Howard street is twenty-three feet wide, and the sidewalks along the buildings on both of these streets are ten feet. At the corner in front of this entrance the surface of the driveway has been so formed as to be flush with the top of the curb, and the sidewalk from the curb has a slight incline upward to the entrance, a ramp effect, making ingress easy. Along the building on Howard street are several gas tanks. The sidewalks mentioned are made of gray cement, while the driveway of the street is laid in red brick, making the curb line readily visible.

Over the corner entrance of the garage building is built a canopy or marquee, slightly over nine feet above the sidewalk, and set back four and one-half feet from the curb line.

The opposite or north half of Howard street near the corner was occupied by two cars side by side; on the south side of the street a third car was receiving gas from one of the gas tanks mentioned. Defendant's van, which was ten and one-half feet high, going east on Howard street, attempted to get through the space left between these standing cars; and to turn down William street, pulled over to his right " as far as he could," drove onto the sidewalk at the corner, struck and knocked down a part of the marquee with the top of the van. Plaintiff was standing under the marquee at the time, and was thus injured. The facts are substantially without dispute, as the court so instructed the jury at several points in the charge, without exception. The question of lack of repair is not involved.

The defendant driver and the defendant owner did not appear on the trial, and do not appeal. The judgments against the defendant garage company and the defendant city are here under review. The complaint alleges that the garage company built and maintained the marquee in question, as well as the sidewalk thereunder, pursuant to the authority and consent of the city; that it was an unlawful encroachment upon the public street, and that the garage company was guilty of erecting and maintaining a nuisance; and that the city was negligent in failing to abate the nuisance.

It appears clear that the proximate cause of the accident was the unlawful use of the sidewalk by the truck driver. There was no claim by him that he could not see or did not know where the driveway was, or that he could not determine the location of the curb line, for a few feet in length, which separated the sidewalk from the driveway, or that he was confused or misled. He admitted that he pulled his truck to the right " as far as he could," and did not deny that he drove on the sidewalk. And the merest recital of the facts makes it apparent that the truck could not strike the marquee otherwise, located as it was four and one-half feet back from the curb line. It is evident that he went upon the sidewalk as a short cut to get free of the traffic congestion.

Streets and sidewalks have been devoted to so many uses for the benefit of abutting owners that it cannot be said that all obstructions are unlawful. Such has been the holding of the courts. No authoritative case has held that the right of the public to the unobstructed use of sidewalks is absolute; but on the contrary, this use has been subject to substantial qualifications, despite the fact that each obstruction may in some degree impede its use or in some degree create a danger. This is true of electric light and telephone poles, coal holes, hydrants, etc., for public or *quasi*-public purposes, stoops outside of the building line, horse blocks, tie posts, awnings, gas tanks, overhanging bay windows, overhanging signs, and marquees of various types, for the benefit of abutting owners. Awnings and marquees, both ornamental and useful, are common at the entrance to theatres, stores, hotels and other similar places, as well as private residences. It would be difficult to find a hamlet or a village or city in the country where such practices are not followed. Hundreds of such obstructions are found in the city of Albany. Municipalities have the authority to grant or consent to special privileges to abutting owners, although they may not permit encroachments which unreasonably impede or endanger the proper use of a sidewalk. It is a part of our common law that such restricted uses of the highways are an incident to abutting ownership.

No question is raised as to the quality of materials or workmanship in the construction of the marquee, nor as to its condition of repair. The liability of the defendants on account of it, if any, depends entirely on its location, whether it was an unreasonably dangerous obstruction to the lawful use of the sidewalk; whether its location " was dangerous," and also whether " the danger was unreasonable; " or the danger was " so remote or trifling that a reasonable man in the exercise of reasonable care would not have striven to avoid it; " or whether it was one of the " legitimate obstructions," above mentioned. (*Stern* v. *International R. Co.*, 220 N. Y. 284, 290–295.) If it were not unreasonably placed over the sidewalk, its erection and maintenance were not chargeable to the garage company as a nuisance, nor was its presence chargeable to the city as negligence.

There was no evidence that it was not high enough, or extended too far over the sidewalk, or of any practice or custom or of any legal or architectural standard, in the city of Albany, relative to the building of marquees. There was no proof what the elevation above the sidewalk should have been, what the distance from the curb line. There was no proof that the one in question was unusual in any particular, or failed to conform to any definite and reasonable requirements. The fact that it did not provide head room for the use of moving vans running unlawfully on the sidewalk is not an indication that it did not meet a reasonable standard.

It was not claimed that this marquee should have been located to meet particular conditions, such as was claimed relative to the electric light pole placed in close proximity to the driveway of a fire station, where the company would be expected to go to fires with great dispatch and where it might be fairly apprehended that the horses would not be under exact control (*Lambert* v. *Westchester El. R. Co.*, 191 N. Y. 248); nor is this case similar to one where an awning post was so placed at the curb line as to be struck by the wheel of a truck passing in the carriageway (*Mansfield* v. *New York City*, 119 App. Div. 199); nor similar to the case where a trolley pole was placed in the middle of the street without a light or other suitable warning (*Stern* v. *International R. Co.*, *supra*). And of course it did not partake of such danger possibilities as did the lighted fire hydrant in the middle of West street in New York city, which was held not to be a nuisance (*Morse* v. *City of New York*, 236 App. Div. 504); nor as did the trolley pole in Fordham Square which was struck by an automobile (*Lawson* v. *City of New York*, 216 App. Div. 237). Neither could it be said to be a danger comparable to the awning brace over which a pedestrian on the sidewalk stumbled in front of a theatre in New York city, and which was held to be a lawful obstruction (*Harman* v. *City of New York*, 148 App. Div. 61); nor a danger comparable to the stepping stone forty inches long, twenty inches wide, and fourteen inches high, placed on the sidewalk at the curb, which was regarded as a lawful obstruction, even though the plaintiff stumbled over it, and others had fallen there before (*Dubois* v. *City of Kingston*, 102 N. Y. 219).

The marquee in question was a lawful obstruction over the sidewalk, which occasioned neither unreasonable impediment nor unreasonable danger to travel thereon, nor even to travel in the carriageway. There was no proof that it did not meet common practice in the maintenance of such structures in the city of Albany. It neither hindered nor endangered any one making a proper use of the streets. Accordingly it was not a proximate cause of the accident or of plaintiff's injury.

The so-called "ramp," referred to in the testimony, was simply a part of the sidewalk, with a slight increase of incline to expedite the movement of automobiles through the entrance. As above noted, the line of demarcation between it and the carriageway was clear and marked. It bore no substantial relation to the occurrence complained of.

The judgment against the city of Albany and against the Albany Garage Company should be reversed, and as to them the complaint should be dismissed.